IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Johnnie Howell,<br><br>Plaintiff,<br><br>vs.<br><br>Phillip Thompson and Tom Fox,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A No.: 1:09-2762-TLW-SVH<br><br><br><br><br>REPORT AND RECOMMENDATION |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at J. Reuben Long Detention Center ("JRLDC"). Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging claims of violations of his constitutional rights.

Before the court are the following motions: (1) Plaintiff's Motion for Summary Judgment [Entry #12]; (2) Plaintiff's Motion for Discovery [Entry #14]; and (3) Defendants' Motion for Summary Judgment [Entry #15]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I. Factual and Procedural Background

Plaintiff filed his complaint in this action on October 27, 2009 [Entry #1]. Defendants' motion for summary judgment was filed on February 12, 2010 [Entry #15]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #16].

Plaintiff failed to file a response to Defendants' summary judgment motion, although he did file his own summary judgment motion and a corresponding reply. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted, rendering the remaining motions moot.

Plaintiff claims Defendants have subjected him to unlawful conditions of confinement by housing him in allegedly overcrowded cells and denying him access to a law library. Plaintiff has not alleged any physical, mental, or emotional injury, nor has he alleged any specific legal injury.

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to

the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III. Analysis

Plaintiff's claims are analyzed through the lens of the Due Process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill v. Nicodemus,* 979 F.2d at 991. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement

does not convert the conditions or restrictions of detention into 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. In doing so, the *Bell* court noted, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) and *Hill v. Nicodemus*, 979 F.2d at 991-92). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

A. Exhaustion of Administrative Remedies

Defendants first contend that Plaintiff did not exhaust his administrative remedies with regard to his claims. The court agrees.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a § 1983 action concerning his confinement.

Specifically, 42 U.S.C.A. § 1997(e) states: "No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires "proper exhaustion." *Id.* The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps the agency holds out, and doing so properly." *Id.* (internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. *Id.*

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Here, Plaintiff admits that he has filed one grievance with respect to law library access, but has not received a final institutional answer to the grievance. Because Plaintiff admittedly failed to exhaust his administrative remedies, his claims must be dismissed at this time.

B. Conditions of Confinement

In the event that the district judge does not agree that Plaintiff has failed to exhaust his administrative remedies, the undersigned analyzes the merits of Plaintiff's conditions of confinement claim as follows.

Although prisoners retain many constitutional rights, it has been recognized that incarceration inherently limits certain constitutional rights of prisoners. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The United States Supreme Court has held that prison officials have a duty under the Eighth Amendment and county detention centers have a duty under the Fourteenth Amendment to provide humane conditions of confinement: they must ensure adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Plaintiff's general complaints of overcrowding and being forced to eat near a toilet are insufficient to survive summary judgment. In order to state a viable conditions-of-confinement claim an inmate must show that: (1) the conditions were objectively serious enough to pose a substantial risk of serious harm; and (2) that the prison official's state of mind was one of "deliberate indifference." *Farmer*, 511 U.S. at 834.

In *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993) the Fourth Circuit explained that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant harm. The Prison Litigation Reform Act ("PLRA") of 1996 also placed an important limitation upon all actions arising from prison conditions, requiring proof of "physical injury" arising from the allegedly unconstitutional condition. Under 42 U.S.C. § 1997e(e) no recovery of monetary damages is allowed for emotional stress: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Therefore, there is no liability under § 1983 for such claims.

In this case, Plaintiff's complaints of overcrowding are insufficient to set forth a constitutional claim, as he has failed to present any evidence showing his basic needs were not met, that he was forced to endure the alleged overcrowding for extended periods, or that he suffered any injury. *Strickler*, 989 F.2d at 1382; *see also*, *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("[I]t is well established that 'double or triple celling of inmates is not per se unconstitutional.'"); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (Dismissal of claim proper where inmate relied on conclusory allegations and failed to identify any actual injury).

Thus, because Plaintiff has failed to prove his basic human needs have not been met or that he has suffered any physical injury, Plaintiff cannot demonstrate a constitution

deprivation. Likewise, Plaintiff has not alleged, nor has he proven, that Defendants have acted with deliberate indifference to his constitutionally-required needs. For these reasons, Plaintiff's claim of overcrowding cannot survive summary judgment.

C. Denial of Access to the Courts

Plaintiff also alleges denial of access to the courts, based on the lack of a law library. In order to state a claim of denial of access to the courts, a plaintiff must allege that he had been prejudiced in pursuing non-frivolous litigation concerning his conviction or prison conditions. *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Id.* at 343. In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723-24 (4th Cir. 1989).

A plaintiff must demonstrate that the defendants caused actual injury, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis*, 518 U.S. at 353-54. The actual injury requirement is not satisfied by just any type of frustrated legal claim. Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353-55.

Further, the Fourth Circuit has ruled that the United States Constitution does not require every local jail to have a law library. *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Barr v. Williamsburg County*, 2007 WL 666793, at *3 (D.S.C. 2007) (holding "county jails and county detention centers are not required to have law libraries."). "[T]he brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Magee*, 810 F.2d at 452. Finally, representation by counsel negates a prisoner's claim of inadequate access to the courts. *Hause v. Vaught*, 993 F.2d 1079 (4th Cir. 1993).

In this case, Plaintiff simply alleges that he was denied access to a law library "to prepare for [his] court case," but fails to allege any specific facts as to how a pending legal case, or any other legal matter, has been adversely affected due to his denial of access to legal materials. Therefore, Plaintiff has failed to state a cognizable claim.

D. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

IV. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #15] be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, the remaining motions will be rendered moot.

IT IS SO RECOMMENDED.

August 9, 2010
Florence, South Carolina

Shiva V. Hodges
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**